Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4353 | DATE | 11/2/2000 |
| CASE TITLE | RONALD G. CANTRELL vs. MILLER FLUID POWER CORPORATION, et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The motion to dismiss [9-1] is denied. Defendant CKD Corp. of Japan shall answer the amended complaint by November 16, 2000. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | NOV 0 3 2000 | |
| ✓ | Notices mailed by judge's staff. | date docketed | 17 |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | 11/2/2000 | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 00 NOV -2 PM 5: 20 | date mailed notice |
| SB | courtroom deputy's initials | Date/time received in central Clerk's Office | jad mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD G. CANTRELL, | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 4353 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| MILLER FLUID POWER CORPORATION, an Illinois corporation, CKD-CREATEC CORPORATION, an Illinois corporation, CKD CORPORATION OF JAPAN, a Japanese corporation, and GO SUGIURA, | ) ) ) ) ) ) | |
| Defendants. | ) | |

**DOCKETED**
**NOV 0 3 2000**

## MEMORANDUM OPINION AND ORDER

Ronald Cantrell sues Miller Fluid Power Corp. ("Miller Fluid"), CKD-Createc Corp. ("Createc"), CKD Corp. of Japan ("CKD") and Go Sugiura (collectively "defendants") for discrimination on the basis of race and ethnic background (Counts I and II), as well as age (Counts III and IV). CKD brings this motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. Proc. 12(b)(2).

## BACKGROUND

**A** **Procedural History**

Cantrell filed his original complaint on July 18, 2000. The complaint alleged he was terminated based on his race and ethnic origin in violation of 42 U.S.C. § 1981 (Count I) and Title VII of the Civil Rights Act, 20 U.S.C. § 2000e, et seq. (Count II). Cantrell also alleged willful age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq. (Counts

17

III & IV). Finally, Cantrell asserted tortious interference with prospective economic advantage (Count V) and contract (Count VI) claims.

In the original complaint, CKD was named only in Counts V and VI. On September 18, CKD moved to dismiss Counts V and VI. In response, Cantrell filed an amended complaint on October 25. The amended complaint added CKD as a defendant to the claims under § 1981, Title VII, and the ADEA (Counts I - IV), but eliminated Counts V and VI. As a result, CKD's motion to dismiss Counts V and VI is moot. However, in its motion to dismiss, CKD also argues this court lacks personal jurisdiction over it. Because CKD is still a defendant in this action with respect to Counts I - IV, this court will consider CKD's argument that this court lacks personal jurisdiction.

**B.     Facts**

For purposes of a motion to dismiss, the court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429 (7th Cir. 1996). The following statement of facts is taken from Cantrell's well-pleaded complaint. Doherty v. City of Chicago, 75 F.3d 318, 322 (7th Cir. 1996).

**1.     Parties**

Cantrell is a 57-year-old male Caucasian. He is the former president and chief operating officer of Miller Fluid. Miller Fluid is an Illinois corporation with its principal place of business located in Bensenville, Illinois. Createc is a holding company, incorporated in Illinois, with its principal place of business in Schaumburg, Illinois. Miller is a wholly-owned subsidiary of Createc. CKD is a Japanese corporation with its principal offices located in Nagoya, Japan. Createc is a subsidiary of CKD. CKD owns 91% of the outstanding common shares of Createc. During the relevant period,

2

Sugiura was the president and chairman of the board of Miller Fluid and a member of the board of directors of CKD. Sugiura is a Japanese national and a resident of Illinois.

### 2. Relevant jurisdictional facts

On March 27, 1995, Cantrell commenced his employment with Miller Fluid as its president and chief operating officer pursuant to a written employment contract dated March 21, 1995. Compl., Ex. A. The contract explicitly states Cantrell's hiring would "require the approval of the Board of Directors of CKD of Japan." Id. at 2. Though it was a "routine formality," Sugiura discussed Miller Fluid's prospective hiring of Cantrell with the "senior executives of CKD," and secured their agreement for Cantrell's employment. Id. Cantrell was terminated on September 30, 1999. CKD's board of directors approved and directed Cantrell's termination.

During all dates relevant to this action, CKD maintained a physical presence in Illinois and regularly conducted business in Illinois. Specifically, one or more CKD employees maintained a business office in Bensenville, Illinois on a full-time basis, transacting business on behalf of CKD. One or more CKD employees participated in Miller Fluid's daily management operations including, but not limited to, supervision of quality control, approval of business plans and the selection and approval of suppliers.

## DISCUSSION

### I. Legal standard

A federal court in Illinois has personal jurisdiction over a non-resident defendant only if an Illinois court would have jurisdiction. RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1275 (7th Cir. 1997). Under Illinois law, the plaintiff bears the burden of establishing personal jurisdiction. Id. In

3

deciding a motion to dismiss for lack of personal jurisdiction, the court may receive and consider affidavits from the parties. Turnock v. Cope, 816 F.2d 332, 333 (7th Cir. 1987).

Three obstacles to personal jurisdiction must generally be examined: (1) state statutory law; (2) state constitutional law; and (3) federal constitutional law. However, the Illinois long-arm statute governing the jurisdiction of courts in Illinois provides an Illinois court "may . . . exercise jurisdiction on any . . . basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). Because Illinois law authorizes personal jurisdiction to the extent of constitutional limits, the three inquiries collapse into two constitutional inquiries – one state and one federal. RAR, 107 F.3d at 1276. If jurisdiction is improper under either constitution, the court cannot exercise jurisdiction over the defendant. Jamik, Inc. v. Days Inn of Mount Laurel, 74 F.Supp.2d 818, 821 (N.D.Ill. 1999).

## II.    Illinois Due Process

The Illinois Supreme Court has made clear that the Illinois due process guarantee is not necessarily co-extensive with federal due process protections. Lewis v. Spagnolo, 186 Ill.2d 198, 227 (Ill. 1999). "Unfortunately, however, the Illinois courts have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." RAR, 107 F.3d at 1276. The Illinois Supreme Court has noted federal law may be used as guidance for construction of the Illinois due process clause. Lewis, 186 Ill.2d at 227. The Illinois Supreme Court noted that where the plaintiffs provided no basis or case law to support a broader construction of the Illinois due process clause, then the clause may be interpreted identically with the federal due process clause. Id. Because there does not appear to be any practical reason why Illinois' due process analysis

4

in this case should differ from a federal due process analysis, the court will condense its jurisdictional analysis to the issue of whether federal due process allows this court to assert jurisdiction over CKD.

### III. Federal due process

The due process clause of the Fourteenth Amendment limits when a state court may assert personal jurisdiction over a non-resident defendant. RAR, 107 F.3d at 1277. Federal due process requires CKD to have "certain minimum contacts with [Illinois] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). What this standard means in a particular case depends on whether the party asserts "general" or "specific" jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8 (1984). General jurisdiction is for suits neither arising out of nor related to the defendant's contacts, and is permitted only where the defendant has "continuous and systematic general business contacts" with the forum. Id. at 416.

#### A. Specific jurisdiction

To determine the existence of specific jurisdiction, this court must decide: (1) whether CKD has "purposefully established minimum contacts within the forum State"; and (2) whether, by traditional standards, those contacts would make personal jurisdiction reasonable and fair under the circumstances. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-77 (1985).

#### 1. Minimum contacts

Crucial to the minimum contacts analysis is showing CKD "should reasonably anticipate being haled into court [in Illinois]," because CKD has "purposefully avail[ed] itself of the privilege of

conducting activities" in Illinois. Id. at 474-75. The forum state cannot hale the CKD into court "solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." Id.

CKD has purposely availed itself of the privilege of conducting activities in Illinois. It approved an executive employment agreement with Cantrell that would be performed in Illinois. This court infers that the decision to subject Cantrell's hiring and firing to the approval of CKD's board of directors was initiated by CKD itself. CKD actively participated in Cantrell's hiring and firing. This is not the type of action contemplated in Wallace v. Herron, 778 F.2d 391 (7th Cir. 1985), cited by CKD. There, the court held the defendants "took no action that created the necessary connection with [the forum state] for them to reasonably anticipate being haled into court there." Id. at 394. In contrast, CKD has taken employment actions that suggest CKD should have reasonably anticipated being haled into an Illinois court.

Nor does Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987), apply. There, minimum contacts were not established because the defendants did not intend their product to end up in the forum state. Their product arrived in the state only through the unilateral action of a third party. Id. at 110. In contrast, CKD, by its own volition, made a hiring and firing decision involving an individual employed in Illinois. This provides sufficient minimum contacts for CKD to reasonably anticipate being haled into court in Illinois.

Nor are CKD's contacts with Illinois random, fortuitous or attenuated, as it asserts. CKD approved the hiring of an individual it knew to be employed in Illinois. More importantly, CKD directed the firing of an individual employed by its subsidiary in Illinois. There is nothing random, fortuitous or attenuated about this decision. In contrast, it was deliberate and directed at Illinois. "The fact that [CKD] engaged in this conduct through mail and telecommunications from abroad does

not detract from the appropriateness of exercising personal jurisdiction." Mid-America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1361 (7th Cir. 1996).

### 2. Reasonableness

Next, this court must evaluate whether exercising personal jurisdiction over CKD is reasonable and comports with traditional notions of fair play and substantial justice, by considering the following five factors: (1) the burden on the defendant of litigating in the forum; (2) the interests of the forum; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental substantive policies. Id. at 1362 (citing Asahi, 480 U.S. at 113). "[T]he burden imposed on a foreign defendant who is forced not only to travel a great distance but also to litigate in a foreign nation's judicial system is quite great and should be given significant weight in the reasonableness determination." Asahi, 480 U.S. at 114. However, "[w]hen minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." Id.

The burdens placed on CKD by this litigation are not unreasonable. All defendants are represented by the same law firm. The legal work done on behalf of co-defendants will overlap substantially with CKD's work, and the costs may be shared. Virtually all evidence and witnesses are located in Illinois. The burdens placed on CKD are not inconsequential, but they are outweighed by the factors favoring this court's assertion of jurisdiction.

Cantrell has a substantial interest in obtaining convenient and effective relief. Mid-America Tablewares, Inc., 100 F.3d at 1362. Filing one lawsuit in one forum against all defendants involved in the alleged discriminatory firing furthers this interest. The alleged discrimination occurred to an

7

Illinois resident in Illinois, and Illinois has an interest in having alleged injuries to its citizens fully rectified. Mason v. F. Lli Luigi and Franco Dal Maschio Fu G.B., 832 F.3d 383, 386 (7th Cir. 1987). Finally, both Illinois and the United States have a compelling interest in the enforcement and interpretation of federal civil rights laws. Dehmlow v. Austin Fireworks, 963 F.2d 941, 946 (7th Cir. 1992).

This case is quite different than Asahi. There, the defendants did not intend to direct their products to the United States. The defendants had no offices or telephone listing in the United States. The sole issue remaining in the case was an indemnification claim against Asahi, a minor claim with respect to the original litigation. All other claims had been dismissed. In these circumstances, it was appropriate not to exercise jurisdiction over the foreign defendant. Here, however, Cantrell's interests in obtaining effective relief on his claims in the forum of his choice outweighs the burden that will be placed on CKD in defending this action in this jurisdiction. The exercise of jurisdiction over CKD is consistent with traditional notions of fairness and substantial justice.

### B. General jurisdiction

Even if specific jurisdiction over CKD were not appropriate, the exercise of general jurisdiction would be appropriate. General jurisdiction arises when the non-resident defendant has "continuous and systematic general business contacts" with the forum state. RAR, 107 F.3d at 1277 (citing Helicopteros Nacionales, 466 U.S. at 416). A court looks to a defendant's additional contacts with the forum state beyond those related to the action being brought against it to determine whether it can exercise general personal jurisdiction over the defendant. Dehmlow, 963 F.2d at 947 n.6. A finding that a non-resident defendant is doing business in Illinois so as to maintain a presence here subjects a defendant to personal jurisdiction of Illinois courts for all matters. Aetna Cas. & Sur. Co. v.

8

Crowther, Inc., 581 N.E.2d 833, 835 (Ill.App. 1991). The business engaged in by CKD must be intentional, substantial, and continuous, rather than inadvertent, trivial or sporadic. Asset Allocation & Mgmt. Co. v. Western Employers Ins. Co., 892 F.2d 566, 570 (7th Cir. 1989).

Cantrell's uncontroverted affidavit establishes CKD has an intentional and continuous presence in the state of Illinois. Plaintiff's Response to CKD's Motion to Dismiss ("Pl. Resp."), Ex. 1. Sugiura was not only chairman of the board of directors of Miller Fluid when he informed Cantrell of his termination, he was also a member of CKD's board of directors. Id. at ¶ 4. CKD continually utilized Miller Fluid office space in the course of servicing and selling to CKD's clients in the United States. Id. at ¶ 5. For example, an individual named Naoyuki Yamada had an office at Miller Fluid while Cantrell was employed there. Id. at ¶ 7. Yamada was employed by CKD. Id. His business card states "CKD Corporation / Miller Fluid Power" is located at "800 N. York Road, Bensenville, IL 60106." Id. at Ex. B. The business card lists Yamada as "Vice President CKD Business." Id. The card also provides telephone numbers and a fax number located in Illinois. Id. Yamada received his compensation from CKD, not from Miller Fluid. Id. at ¶ 7. Yamada participated in all aspects of Miller Fluid's general management, attending weekly staffing meetings and monthly financial review meetings. Yamada exercised full supervisory control over Miller Fluid's quality control personnel and also controlled Miller Fluid's choice of suppliers. Id. at ¶ 8. In addition to Yamada, as many as six or seven other CKD employees used office space on a full-time basis at the Miller Fluid plant in Illinois. Id. at ¶ 10. In addition to its employees located in Illinois, CKD approved all of Miller Fluid's business plans. Id. at ¶ 12. CKD sold and shipped products to Miller Fluid in Illinois and conducted other general business with Miller Fluid. Id. at ¶ 13.

These contacts are not sporadic or incidental. They are substantial, intentional, and uninterrupted. Therefore, they are sufficient to establish this court's general jurisdiction over CKD. See Publications Int'l, Ltd. v. Burke/Triolo, Inc., 2000 WL 1536808 (N.D.Ill. Oct. 17, 2000) (Bucklo, J.) (exercising general jurisdiction over defendant on the grounds it had one sales representative in Illinois and a web site that could be accessed by Illinois residents); Kavo America Corp. v. J.F. Jelenko & Co., 2999 WL 715602 (N.D. Ill. June 2, 2000) (Kocoras, J.) (exercising general jurisdiction over a defendant who had two sales representatives in Illinois and maintained a web site accessible to Illinois residents).

## CONCLUSION

For the foregoing reasons, defendant CKD Corp. of Japan's motion to dismiss for lack of personal jurisdiction is denied. The motion to dismiss Counts V and VI is moot.

ENTER:

Suzanne B. Conlon
United States District Judge

November 2, 2000